People v Scott (2020 NY Slip Op 07771)





People v Scott


2020 NY Slip Op 07771


Decided on December 23, 2020


Appellate Division, Fourth Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on December 23, 2020
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Fourth Judicial Department

PRESENT: WHALEN, P.J., SMITH, CURRAN, TROUTMAN, AND DEJOSEPH, JJ.


841 KA 17-00009

[*1]THE PEOPLE OF THE STATE OF NEW YORK, RESPONDENT,
v
DAMON L. SCOTT, DEFENDANT-APPELLANT. 






TIMOTHY P. DONAHER, PUBLIC DEFENDER, ROCHESTER (BRIDGET L. FIELD OF COUNSEL), FOR DEFENDANT-APPELLANT. 
SANDRA DOORLEY, DISTRICT ATTORNEY, ROCHESTER (LISA GRAY OF COUNSEL), FOR RESPONDENT. 


 Appeal from a judgment of the Supreme Court, Monroe County (Thomas E. Moran, J.), rendered August 25, 2016. The judgment convicted defendant upon a jury verdict of criminal possession of a weapon in the second degree and driving while ability impaired. 
It is hereby ORDERED that the judgment so appealed from is unanimously affirmed.
Memorandum: Defendant appeals from a judgment convicting him upon a jury verdict of criminal possession of a weapon in the second degree (Penal Law § 265.03 [3]) and driving while ability impaired (Vehicle and Traffic Law § 1192 [1]). Contrary to the contention of defendant, the police had probable cause to stop the vehicle that he was driving based upon his commission of a traffic violation, i.e., speeding (see People v Robinson, 97 NY2d 341, 348-349 [2001]; People v Moore, 38 AD3d 1313, 1313 [4th Dept 2007], lv denied 9 NY3d 848 [2007]). The officer who initiated the stop testified at the suppression hearing that he had training and experience in visually estimating the speed of vehicles, and further testified that he estimated defendant to be traveling 60 miles per hour on a street where the posted speed limit was 35 miles per hour. It is well settled "that opinion evidence with regard to the speed of moving vehicles is admissible provided that the witness who testifies first shows some experience in observing the rate of speed of moving objects or some other satisfactory reason or basis for his [or her] opinion" (People v Olsen, 22 NY2d 230, 231-232 [1968]). Based on the evidence at the suppression hearing, we conclude that the People met their burden of establishing that the officer's visual observations of the vehicle provided probable cause for the stop (see People v Wyatt, 153 AD3d 1371, 1373 [2d Dept 2017], lv denied 30 NY3d 1024 [2017]).
As defendant correctly concedes, he failed to preserve for our review his challenge to the legal sufficiency of the evidence supporting his conviction. Contrary to defendant's further contention, viewing the evidence in light of the elements of the crime and traffic infraction as charged to the jury (see People v Danielson, 9 NY3d 342, 349 [2007]), we conclude that the verdict is not against the weight of the evidence (see generally People v Bleakley, 69 NY2d 490, 495 [1987]). After the traffic stop, defendant told the arresting officer that his license had been suspended, and he was taken into custody for driving without a license. Defendant also told the arresting officer that he had consumed two beers, and the officer observed that defendant had "glassy eyes" and detected an odor of alcohol on defendant's breath. At police headquarters, defendant refused to submit to a chemical test and failed several field sobriety tests. During the course of the traffic stop, two civilian witnesses, i.e., a convenience store clerk and a newspaper deliveryman, observed an individual, later identified as defendant, discard something into a nearby garbage can, and the deliveryman testified that he believed the discarded object was a gun. Neither witness immediately informed the police of what he had seen and, although the arresting officer also thought that defendant had discarded something immediately prior to the arrest, the officer did not check the garbage can. After the police had left, however, the civilian witnesses checked the garbage can and discovered a gun in it, and the clerk informed the police [*2]of that fact. Inasmuch as there was a gap in time between the arrest and the discovery of the gun, and because there was no chemical test confirming defendant's intoxication, we agree with defendant that a different verdict would not have been unreasonable (see generally id.). Nevertheless, we further conclude that, upon weighing the " 'relative strength of conflicting inferences that may be drawn from the testimony,' " the jury did not fail to give the evidence the weight it should be accorded (id.).
Defendant further contends that Supreme Court erred in allowing the convenience store clerk to testify regarding what he had initially believed was a "joke" made to him by the deliveryman, i.e., that an individual had thrown away a gun in a parking lot trash can. We agree with defendant that the statement was admitted in error inasmuch as it did not show the clerk's state of mind and, in any event, the clerk's "state of mind was irrelevant to any issue developed at trial, and the People had no need to establish a foundation for the testimony concerning [his] subsequent actions" (People v Barrieau, 229 AD2d 664, 665 [3d Dept 1996]). Nevertheless, we conclude that the error is harmless (see generally People v Williams, 25 NY3d 185, 194 [2015]; People v Maher, 89 NY2d 456, 462 [1997]). Contrary to defendant's further contention, the court did not err in admitting in evidence the gun found in the garbage can and photographs of the gun, based on a gap in the chain of custody. " 'The People provided sufficient assurances of the identity and unchanged condition of the [gun] . .
. , and any alleged gaps in the chain of custody went to the weight of the evidence and not its admissibility' " (People v Jefferson, 125 AD3d 1463, 1464 [4th Dept 2015], lv denied 25 NY3d 990 [2015]; see People v Hawkins, 11 NY3d 484, 494 [2008]; People v Inman, 134 AD3d 1434, 1435 [4th Dept 2015], lv denied 27 NY3d 999 [2016]).
We also reject defendant's contention that the court erred in failing to make an inquiry when he raised a complaint about defense counsel that he argues was "tantamount" to a request for replacement counsel. "Even assuming, arguendo, that defendant's complaint[] about defense counsel suggested a serious possibility of good cause for a substitution of counsel requiring a need for further inquiry," we conclude that "the court afforded defendant the opportunity to express his objections concerning defense counsel, and the court thereafter reasonably concluded that defendant's objections were without merit" (People v Bethany, 144 AD3d 1666, 1669 [4th Dept 2016], lv denied 29 NY3d 996 [2017], cert denied — US — , 138 S Ct 1571 [2018]). Finally, the sentence is not unduly harsh or severe.
Entered: December 23, 2020
Mark W. Bennett
Clerk of the Court